UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROMONDE HENRY                                         CIVIL ACTION

VERSUS                                                NO. 12-1886-DEK

ORLEANS PARISH MENTAL
HEALTH DOCTOR C. HIGGINS

### ORDER AND REASONS

Plaintiff, Romonde Henry, filed this civil action pursuant to 42 U.S.C. § 1983 against Dr. C. Higgins.  In the complaint, plaintiff challenged the adequacy of the mental health care he was receiving within the Orleans Parish Prison system.  His claim, in its entirety, was stated as follows:

> I have made over sevral atemps to get Doctor Higgins to look at my street records so that he could see that I was taken mental health meds on the street.  But in return all I get is crul back talk, I have not had my meds sense I ben in jail and my condiction is progressing into something worst.[1]

Dr. Higgins has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2]  Plaintiff was ordered to file an opposition to that motion on or before

---

[1]   Rec. Doc. 2, p. 5

[2]   Rec. Doc. 18.

April 3, 2013,[3] but no such opposition has been received by the Court.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[4]

## I.  Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex Corp., 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather,  "[t]he party opposing summary judgment is required to

---

[3]  Rec. Docs. 19 and 21.

[4]  Rec. Doc. 22.

2

identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996). Moreover, "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

## II. Plaintiff's Claim

As noted, plaintiff claims that he was being denied adequate mental health care while incarcerated within the Orleans Parish Prison system. Specifically, plaintiff alleged that his mental condition had worsened during the course of his incarceration because he was refused the medications he had been taking prior to entering the jail.

The federal constitutional rights of an incarcerated person, regardless of whether he is a pretrial detainee or a convicted prisoner, are violated only if his *serious medical needs* are met with *deliberate indifference* on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). The defendant apparently does not challenge the seriousness of the

medical needs at issue in this case; rather, he argues only that plaintiff's needs were not been met with "deliberate indifference." For the following reasons, it is clear that the defendant is correct on that point.

As to the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

To rebut the allegation of deliberate indifference, the defendant points to plaintiff's medical records. Those records reflect that plaintiff completed and signed a Medical Intake Screening form when he entered the Orleans Parish Prison system. At that time, he stated that he was feeling "fine," had no mental health problems, had not been under the care of a psychiatrist within the past year, had no thoughts of hurting himself or others, and was not having auditory or visual hallucinations. He stated that he had been taking unknown medications for a thyroid problem, but he identified no

other medications, including mental health medications, that he had been taking.[5] When another health assessment was performed a few days later, plaintiff again stated that he had no history of mental illness, no history of suicide attempts, and did not feel like hurting himself or others. He stated that he felt "OK" and was not having hallucinations.[6]

However, several months later in June of 2011, plaintiff submitted a sick call request stating that he had in fact been undergoing mental health treatment prior to entering the jail and had been taking three psychiatric medications (Seroquel, Remeron, and Resperdal). When evaluated by a nurse, plaintiff denied having suicidal or homicidal thoughts, and he appeared to be in a good humor and thinking clearly. Nevertheless, the nurse submitted a request for plaintiff's mental health and pharmacy records and referred him for a psychiatric evaluation.[7] The following month, a psychiatric evaluation was performed, no "Axis I Diagnosis" was evident, it was determined that no psychiatric medications were necessary, and a follow-up was scheduled for the next month.[8] Plaintiff was in fact evaluated the following month, and either no psychiatric medications were necessary or he was refusing such medications. No follow-up was scheduled; however, it was noted that a follow-up would be provided as needed.[9]

---

[5] Rec. Doc. 18-4, pp. 1-3.

[6] Rec. Doc. 18-4, pp. 4-9.

[7] Rec. Doc. 18-4, p. 11.

[8] Rec. Doc. 18-4, p. 12.

[9] Rec. Doc. 18-4, pp. 14-15. The notes are contradictory on the issue of the medications.

The records further reflect by June of 2012 plaintiff's mental health did apparently begin to decline, with him expressing suicidal thoughts. However, the records indicate that, although it was determined that no medications were necessary, he was placed on the mental health tier, suicide-watch protocols were initiated, and his condition was monitored until July 27, 2012, when he stated that he was "OK" and reported no suicidal or homicidal thoughts. At that point, he was returned to the general population with follow-up as needed.[10] Two subsequent evaluations in September of 2012 reflected that plaintiff still was not experiencing any mental health issues at that time.[11]

The Court therefore finds that any allegation of deliberate indifference is clearly rebutted by plaintiff's medical records. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Those records show that the jail medical staff did not refuse to treat plaintiff, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct evincing a wanton disregard for his medical condition. Far from having his condition ignored or care denied, plaintiff was placed on the mental health tier and his condition was monitored until he improved.

The fact that plaintiff apparently believes that more could have done to help him is of no moment, because an inmate is not guaranteed optimal medical care. See Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal

---

[10] Rec. Doc. 18-4, pp. 16-34. This federal lawsuit was instituted while plaintiff was still on the mental health tier, with him signing the complaint on July 7, 2012.

[11] Rec. Doc. 18-4, pp. 35-38.

standard of care."). On the contrary, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Id. at 346 ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference ...."); Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).

Simply put, absent exceptional circumstances, an inmate's disagreement with his medical treatment does not constitute deliberate indifference. Gobert, 463 F.3d at 346. For example, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis whatsoever to engage in such second-guessing here.

Accordingly,

**IT IS ORDERED** that defendant's unopposed motion for summary judgment is **GRANTED** and that plaintiff's federal civil rights claims pursuant to 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this eighteenth day of April, 2013.

                                          **DANIEL E. KNOWLES, III**
                                          **UNITED STATES MAGISTRATE JUDGE**